Gary ANDERSON, Appellant (Plaintiff),

v.

LOUISIANA–PACIFIC, a Delaware corporation, Appellee (Defendant).

No. 92–164.

Supreme Court of Wyoming.

Aug. 9, 1993.

James A. Raymond, Brown, Raymond & Rissler, Casper and Thomas J. Herd, Cross, Gaddis, Kin & Quicksall, P.C., Colorado Springs, CO, for appellant.

David G. Lewis, Reeves, Murdock, Lewis & Gifford, Casper, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The major question posed in this case, which arises out of products liability claims, is whether the trial court erred in refusing to admit into evidence testimony from a human factors expert. Other issues are asserted with respect to claims of error in instructing the jury on misuse of the

product and on assumption of the risk. We hold that the refusal of the testimony from the human factors expert was a matter subject to the discretion of the trial judge, and no abuse of discretion is demonstrated by the record. We agree with the trial court that, under the circumstances of this case, it was appropriate to instruct on misuse of the product and on the defense of assumption of risk. We affirm the judgment of the trial court entered upon the verdict of the jury, which found for the defendants on all asserted theories of liability.

Appellant, Gary Anderson (Anderson), sets forth the following issues in his brief:

A. Did the court err in precluding all of the testimony of Dr. Karnes, a well-qualified human factors expert who met all of the requirements to testify as an expert under W.R.E. 702?

B. Did the trial court err in giving the jury an instruction on "misuse of a product" when the product was specifically designed to be used as stair tread, and was in fact used as stair tread when the accident occurred?

C. Did the court err in instructing the jury on an assumption of the risk affirmative defense, when there was no evidence that Anderson knew of any risk or danger in using the particleboard stair tread as stair tread?

Louisiana–Pacific, in the Brief of Appellee, articulates the issues in this way:

A. Whether it was an abuse of the trial court's discretion to exclude the testimony of Edward Karnes, human factors expert, on the question of the adequacy of warnings about the use of the particleboard.

B. Whether the evidence in the case supported the trial court instructing the jury on the defense of "misuse of a product".

C. Whether the trial court erred by instructing the jury on the defense of "assumption of risk."

In October of 1985, Anderson began constructing an open-riser stairway in the basement of his home in Lynch, Wyoming. Anderson's plan was to build the stairway using two-inch clear (knot-free) lumber for the treads on the stairs. He requested his wife to purchase the lumber at Casper Lumber Company. When Anderson's wife went to Casper Lumber Company, the salesperson advised her that he did not have the type of lumber Anderson had requested. Instead, particleboard stair tread was recommended, and the salesperson advised it was the preferred material of house building contractors in Casper. No warning was offered by the salesperson to Mrs. Anderson to the effect that the particleboard stair treads were not to be used on open-riser stairways.[1] Furthermore, no warning was set forth on the particleboard Mrs. Anderson purchased.

Mrs. Anderson returned home with the particleboard, and she related to Anderson what she had been told by the salesperson at Casper Lumber Company. Anderson inspected the particleboard and cut it into proper lengths and widths to fit the stringers (the stairway frame). He then began laying the tread on the stringers, one at a time, proceeding up the stairway. Anderson partially nailed the first tread and the fifth tread to insure a proper fit and then proceeded to place the rest of the treads on the stringers without securing them. After laying all the treads on the stringers, Anderson began nailing them to the stringers, starting at the top step and working down. While Anderson was nailing the treads to the stringers, because of the way he had proceeded with the task, it was necessary for him to stand, kneel, and walk on treads that were not secure.

Anderson was on his knees on the unsecured tread just below the top step preparing to nail the top tread to the stringers, when he fell approximately seven feet to the basement floor. He seriously injured his left knee, and he also hurt his neck and right hand. His injuries prevented him from resuming his former employment in the field of geology.

1. An open-riser stairway is one that has no up- right members between the treads.

In his complaint, filed against Louisiana–Pacific, Anderson alleged negligent failure to warn and strict liability for a defective product. Anderson theorized the defect was attributable to Louisiana–Pacific's failure to warn that the particleboard tread was not to be used on open-riser stairways. As his theory of the cause of the accident, Anderson urged that, because the tread was not supported by a riser, it broke under his weight as he was kneeling on it. Louisiana–Pacific contended that, because Anderson had not secured the tread to the stringers, it slipped while he was kneeling on it, and it broke when it struck the basement floor, not because Anderson was kneeling on it.

The case was tried to a jury beginning on June 1, 1992 and, on June 5, 1992, the jury returned a verdict against Anderson. The special verdict of the jury encompassed the following specific findings:

- Louisiana–Pacific did not negligently manufacture its particleboard;

- Louisiana–Pacific did negligently fail to warn of reasonable dangers associated with the particleboard, but that failure to warn was not the proximate cause of Anderson's injuries;

- Anderson was negligent in the use of Louisiana–Pacific product;

- The particleboard stair tread was not in an unreasonably dangerous defective condition;

- Anderson's misuse of the product caused the accident;

- The use of the product by Anderson with knowledge of danger was not the cause of the accident.

 As we noted, the primary issue is Anderson's claim that the trial court erred in excluding the testimony of the human factors expert. Anderson offered that testimony to explain Louisiana–Pacific's duty to warn and the kind of warning which should have been provided. The trial court, in addressing a motion in limine by Louisiana–Pacific, ruled the expert testimony would not be received because it would not assist the jury in understanding the evidence or in determining any fact in issue.

Expert testimony is the subject of WYO. R.EVID. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The purpose of WYO.R.EVID. 702 is not to provide for blanket admissibility of expert testimony. The trial court still is vested with discretion in determining whether to exclude such testimony because it is deemed unnecessary or not helpful to the trier of the factual issues. We do not disturb the trial court's decision to exclude or admit expert testimony unless we identify an abuse of discretion. *Reed v. Hunter*, 663 P.2d 513 (Wyo.1983). In this instance, we can discern no abuse of discretion in excluding the proffered testimony of the human factors expert.

We cannot formulate any bright line rule categorizing kinds of expert testimony as either helpful or not helpful. In *Krahn v. Pierce*, 485 P.2d 1021, 1026 (Wyo.1971), we recognized this difficulty when we noted that "[w]hether in any given case, the expert testimony is necessary to aid the jury in its search for the truth depends upon such a variety of factors readily apparent only to the trial judge that we must depend heavily upon his judgment." Because the nature of decisions regarding the usefulness of expert testimony varies so significantly with the trial circumstances, we are not persuaded by the cases Anderson cites illustrating the use of human factors testimony in other jurisdictions. We can only conclude Anderson's authorities demonstrate it was not error to admit such testimony in those cases.

The trial judge made a careful review of the deposition of the human factors expert and then found the proposed testimony would not be of assistance to the jury both because the testimony would go to matters within the ken of the average juror, and

because Anderson had designated other witnesses to provide similar testimony. The determination of the trial judge was bolstered by the expert's response, during his deposition, to a question addressing the scientific basis for his conclusion that the warning Louisiana–Pacific provided with the particleboard would not reach the ultimate user of the product. The expert testified at the deposition:

I don't know. **It's so obvious** that I'm not sure that anybody taking time to write it down as a topic in an article or a chapter of a book. I don't know. I'd have to—I can look through my library here. I'm sure I can find something that certainly fits the bill, **but it's so abundantly obvious that I don't think it requires a great deal of expertise to arrive at that conclusion, if that's really what you are getting at. I think that a jury, for example, could understand that quite well without my explaining it to them.** (Emphasis added.)

The thrust of this testimony was that the opinion of the expert would not assist the jury.

Under these circumstances, we conclude there was no abuse of discretion in excluding the testimony of the human factors expert. Since we hold there was no abuse of discretion, it is not necessary to address the question of whether any such error was prejudicial or whether it would have been harmless in any event.

■ Anderson next urges the trial court erred in instructing the jury on the defense of misuse of the product. The instruction given states:

A manufacturer or seller is entitled to expect a use of his product which is reasonably foreseeable by the ordinary consumer who purchases or uses it with the ordinary knowledge common to the community as to its characteristics.

Community means those who ordinarily use a product in question.

Anderson's contention is that no evidence exists upon which the jury could have found misuse of the particleboard tread because its intended use was as a stair tread and that was how it was used. In order to justify an instruction, there must be evidence before a jury to which they may apply the rule of law given by the court in the instruction. *Hernandez v. Gilveli*, 626 P.2d 74 (Wyo.1981); *Beard v. Brown*, 616 P.2d 726 (Wyo.1980).

We do not agree with Anderson's perception of these circumstances. It is true Anderson was using the particleboard as stair tread. The record, however, contains evidence from which the jury could have decided that Anderson, while using the particleboard as stair tread, was not using it in the manner intended by the manufacturer. Particularly, the manufacturer would not anticipate Anderson would lay all but two of the treads on stringers without nailing them securely. Anderson conceded it was dangerous for him to stand, kneel, and walk on the unsecured stringers. In *Schneider Nat'l, Inc. v. Holland Hitch Co.*, 843 P.2d 561 (Wyo.1992), we defined misuse as using a product for an unintended or unforeseeable purpose. In this case, we expand upon *Schneider* by pointing out that using the product in an obviously dangerous manner is the same as using it for an unintended or unforeseeable purpose.

In this case, misuse of the product was treated by the parties and the court as an affirmative defense. Misuse was pleaded as an affirmative defense by Louisiana–Pacific, and the instructions to the jury placed the burden of proof as to misuse upon Louisiana–Pacific. Therefore, it is the law of this case that misuse of the product is an affirmative defense, which we perceive to be the appropriate rule in any event.

We perceive this case to be similar to *Kysor Indus. Corp. v. Frazier*, 642 P.2d 908 (Colo.1982). The jury apparently concluded the stair treads only were dangerous because of the way in which Anderson used them, and the failure to warn of the alleged product defect did not result in any dangerous condition in this case, absent the manner in which Anderson used the stair treads. In some jurisdictions, the careless use of a product by the consumer does not constitute misuse so as to bar recovery

under a theory of strict liability. *See* Randy R. Koenders, Annotation, *Products liability: Product Misuse Defense*, 65 A.L.R.4th 263 (1988).

The trial court's instruction to the jury explaining misuse (quoted here-in-before) would not, on its face, extend to the mere careless use of the stair treads by Anderson. It does, however, suffice to support a factual conclusion that use in an obviously dangerous manner was not reasonably foreseeable. Under these circumstances, we find no error in the giving of the instruction.

■ Our final consideration is Anderson's contention that there was error committed by the trial court in instructing the jury on the defense of assumption of risk. Actually, this instruction was in the form of use with knowledge of the danger, which is assumption of the risk. In view of the fact that the jury found Anderson's use of the stair treads with knowledge of the danger was not a cause of the accident, there was no prejudice to Anderson by the giving of this instruction, and we conclude no reversible error was committed in giving it. We have, however, noted in *Schneider* that assumption of risk is a bar to recovery under the theory of strict liability incorporated in RESTATEMENT (SECOND) OF TORTS § 402A (1965).

Since we find no abuse of discretion by the trial court in excluding the testimony of the human factors expert, and no error in the giving of the instructions by the court on misuse of the product and assumption of the risk, the decision of the trial court in this case must be affirmed.

MACY, Chief Justice, concurring.

I concur. However, I write to clarify one point about which, in my view, we have been somewhat inattentive in our prior opinions.

The final issue addressed by the majority opinion considers a defense which is generically classified as "assumption of risk." The majority opinion states: "Actually, this instruction was in the form of use with knowledge of the danger, which is assumption of the risk." It would be accurate to say: "Use with knowledge of danger is a subcategory of a generic doctrine known more generally as assumption of risk."

Of course, because of the advent of comparative negligence, the defense, in pure negligence cases, once known precisely as "assumption of risk" has gone by the wayside. WYO.STAT. § 1–1–109 (1988); *Brittain v. Booth*, 601 P.2d 532 (Wyo.1979). I would prefer to see this Court discard use of the generic expression "assumption of risk":

> It has been a subject of much controversy, and has been surrounded by much confusion, because "assumption of risk" has been used by the courts in several different senses, which traditionally have been lumped together under the one name, often without realizing that any differences exist.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68 at 480 (5th ed. 1984). *See also* Annotation, *Effect of Adoption of Comparative Negligence Rules on Assumption of Risk*, 16 A.L.R.4th 700 (1982).

Because of the controversy and confusion which surround this "doctrine," it is my belief that we would work a notable service for the Wyoming Bar and a significant advancement for the jurisprudence of this state if we were to limit our discussion to the specific category of defense under scrutiny. In this case, that is "use with knowledge of danger."