Frank J. HATCH, III; Wendy Hatch; Frank J. Hatch, IV; and by Frank J. Hatch, III and Wendy Hatch as next friend for their minor children Anna Corinna Hatch; Matthew Hatch; and Michael Hatch, Appellants (Plaintiffs),

v.

STATE FARM FIRE AND CASUALTY COMPANY, a corporation; Garry Kitchens; and Dennis Murphy, Appellees (Defendants).

No. 95–78.

Supreme Court of Wyoming.

Jan. 13, 1997.

384

John E. Stanfield of Smith, Stanfield & Scott, Laramie, John B. "Jack" Speight and

Dominique D.Y. Cone of Hathaway, Speight & Kunz, Cheyenne (Speight and Cone participated in the appeal only), representing appellant.

W.W. Reeves and Timothy W. Miller, of Reeves & Murdock, Casper, representing appellee.

Before TAYLOR, C.J.,* and THOMAS, MACY and LEHMAN, JJ., and O'BRIEN, District Judge.

THOMAS, Justice.

The theme of this case is that Frank J. Hatch, III (Mr. Hatch), Wendy Hatch (Mrs. Hatch), Frank J. Hatch, IV, Anna Corinna Hatch (Corinna), Robert Matthew Hatch and Michael Logan Hatch, (the Hatches or Hatch family) were deprived of their collective right to a fair trial on their claims for benefits under a home fire insurance policy; a duty of good faith and fair dealing in resolving their policy claim; and were subjected to intentional infliction of emotional distress. After this court remanded the Hatches' first appeal, *Hatch v. State Farm Fire and Cas. Co.*, 842 P.2d 1089 (Wyo.1992) (*Hatch I*), they lost the jury trial. The Hatches now present a litany of issues all designed to establish some error that deprived them of a fair trial. We hold that there is no merit in any of their claims of error. The directed verdicts for agents Garry Kitchens (Kitchens) and Dennis Murphy (Murphy), and for State Farm Fire and Casualty Company (State Farm) on the issue of punitive damages are affirmed. The judgment in favor of State Farm, entered upon the jury verdict, is affirmed.

The Hatches set out eleven issues in their Appellants' Brief on Appeal to Wyoming Supreme Court as follows:

I. Was it proper for the trial court to instruct the jury on a defense that was not contained or defined in the insurance contract between the Plaintiffs and the Defendant State Farm?

II. Did the trial court properly instruct the jury not to consider the fact that Mr. Hatch was acquitted on criminal arson charges even though State Farm's role in

---

* Chief Justice as of July 1, 1996.

Mr. Hatch's arson prosecution formed part of Mr. Hatch's bad faith claim, even though evidence regarding the criminal trial had been admitted throughout the trial, and even though the court referred to the criminal trial in other instructions?

III. Was it error for the trial court to instruct the jury not to consider the Hatches' damages resulting from State Farm's denial of coverage when the Hatches asserted a cause of action for coverage?

IV. Was it inconsistent with the principles established in *Hatch I* for the trial court to instruct the jury that it must not award damages resulting from the denial of coverage?

V. When the evidence is presumed to be true and construed in favor of the Hatches, was it proper and consistent with principles established in *Hatch I* for the trial court to direct a verdict in favor of Defendant Kitchens? Defendant Murphy? Defendant State Farm as to punitive damages?

VI. Is it proper under Rule 32 to edit and re-arrange and revise the deposition of an "unavailable" deponent—as was done in this case—and to eliminate testimony even though no valid objections were made at the time of the deposition and where objections might have been obviated or cured if an appropriate objection had been made when the deposition was taken?

VII. In a case involving bad faith and unfair dealing, was it error for the trial court to eliminate from a 1991 deposition all questions in which the term "good neighbor" was used where no objections on that ground were asserted and where that issue was never raised at the time the deposition was taken and where the deponent is "unavailable" within Rule 32?

VIII. Was it error for the trial court to refuse to admit the Hatches' application for insurance coverage even though the application was relevant to issues of coverage, bad faith, and State Farm's conduct vis-a-vis the Hatches?

IX. In an insurance bad faith case, was it error for the trial court to admit confidential and legally protected evidence of the Hatches' daughter's juvenile record and counseling concerning an event when [sic] occurred three years prior to the fire at issue in this case?

X. Was it error for the trial court to reject the Hatches' claim for attorney fees under Wyo. Stat. Ann. § 26–15–124, which was enacted to protect policyholders from expensive litigation when insurance companies engage in unreasonable conduct and deny their claims. [sic]

XI. In view of all the erroneous or unfair rulings in this case, is it reasonable to conclude that those errors or unfair rulings are harmless when viewed from the standpoint of their cumulative effect?

In the Brief of Appellees, State Farm, Garry Kitchens and Dennis Murphy reframe the issues as follows:

1. Whether the district court should be reversed based on objections waived at trial.

2. Whether Appellants have failed to establish prejudicial error.

3. Whether Appellants' arguments regarding damages are moot in light of the jury's findings against them as to liability.

4. Whether the district court properly instructed the jury on State Farm's arson defenses.

5. Whether the district court correctly directed a verdict on Appellants' intentional infliction of emotional distress claims.

6. Whether the district court abused its discretion in making the three evidentiary rulings challenged on appeal.

7. Whether the district court properly denied Appellants' request for attorneys' fees.

In *Hatch I*, we summarized the underlying facts in the case in this way:

A fire was discovered in the basement of appellants' house about 2:00 a.m. on August 4, 1987. The fire started in the southwest corner of the house. Gasoline was found in carpet samples after the fire. The nearest source of ignition was a woodburning stove fifteen feet away which had a hot fire box twelve inches off the floor. Firemen found a gasoline container in the garage, lying on its edge under a chair,

with the broad side against the garage wall. An explanation for how gasoline was detected in the basement was that the family dog knocked the gas can over and the contents ran through a crack in the garage floor, down the outside of the basement wall, then under the wall and into the basement.

Appellees' [State Farm's] claims specialist, appellee Garry Kitchens responded to notice of the fire; he was replaced five days later. He made no estimates, and did not review any work produced by State Farm's investigation nor participate in any decisions. Kitchen's replacement, appellee Dennis Murphy, continued the investigation of appellants' claim. He stated that his work represented his "best and most conscientious effort" and that his recommendations represented his "honest belief that Mr. Hatch started the fire in his house." Appellant Frank J. Hatch, III was charged with arson. An Albany County jury returned a not guilty verdict.

*Hatch I,* 842 P.2d at 1091. We considered the summary judgment entered by the trial court in *Hatch I,* and our dispositive paragraph reads:

Affirmed in part, reversed in part, and **remanded for trial on the claim for benefits under the policy and the cause of action for violation of a duty of good faith and fair dealing.**

*Hatch I,* 842 P.2d at 1099 (emphasis added).

The case then was tried to a jury on the three remaining claims asserted by the Hatch family. These included a claim to recover the policy benefits, a claim for bad faith in the claims handling practices of State Farm, and a claim for intentional infliction of emotional distress. The district court directed verdicts for Kitchens and Murphy, and also directed a verdict for State Farm on the claim of intentional infliction of emotional distress and the issue of punitive damages. The jury returned a verdict in favor of State Farm on the remaining claims against it for recovery of the policy benefits and bad faith in the handling of the claim.

In the course of their case in chief, the Hatches offered the discovery deposition testimony of an expert witness, Carrol M. Cloyd (Cloyd), into evidence pursuant to WYO. R. CIV. P. 32 because Cloyd had died before the trial. At the deposition, Cloyd had been qualified as an expert on insurance industry standards for good faith and fair dealing in the investigation and handling of insurance claims. Cloyd then had identified thirteen areas in which, in his opinion, State Farm failed to meet the industry standards for investigation and handling of the Hatches' claim. His testimony was relied upon to demonstrate that State Farm's investigation and handling of the Hatches' claim did not comply with industry standards. After a very deliberate consideration, the court summarized and then excluded ten of the thirteen areas of Cloyd's testimony. The court ruled that the testimony was beyond Cloyd's area of expertise because he had not been qualified to testify on the severity of emotional distress and no foundation had been laid to demonstrate that he was an expert in arson, nor had there been available to him the opinions of other experts in that area when he testified.

Prior to trial and during trial, a major problem arose with respect to the preparation of jury instructions. In a letter sent during the pre-trial period, the district court anticipated problems with the jury instructions because of the extreme acrimony between counsel. The court directed counsel to meet on a particular date to resolve as many jury instructions as possible and produce a joint draft of a verdict form. On the date of the court directed meeting, counsel advised the court by correspondence that they could not agree on anything. Instead, the respective parties separately submitted their proposed instructions, and the court then compiled a set of instructions to be used by counsel as a starting point to end the impasse. Even after these efforts, the jury had to wait for instructions before beginning its deliberations because a final instruction conference had to be conducted.

The court ultimately composed a set of thirty-one instructions and gave those to the jury. The jury returned a verdict in which it stated that State Farm did "establish by the preponderance of the evidence that the cause of the fire in the Hatch residence on August

4, 1987 was the intentional setting of the fire by Francis J. Hatch, III." Recovery of the policy benefits was denied, and in addition, the jury found against the Hatches with respect to all of their causes of action for bad faith in the handling of the claims. The Hatches appeal from the Order on Directed Verdict Motion and Judgment on Jury Verdict.

We consider first the claims of error relating to the evidence. These are captured in Issues VI, VII, VIII, and IX set forth by the Hatches. Error on the part of the trial court is charged in the redaction of certain testimony from the Cloyd deposition; in the refusal to admit into evidence the application for insurance that the Hatches submitted to State Farm; and in admitting testimony and evidence relating to the daughter's juvenile record and psychological testing and counseling.

The Hatches assert an abuse of discretion on the part of the trial court in the redaction of portions of the Cloyd deposition. They argue that the court refused to comply with WYO. R. CIV. P. 32,[1] when it allowed State Farm to object at trial to a matter that was not objected to at the time of the deposition. The Hatches' position is that the failure to

object eliminated any opportunity of obviating or removing the problems at the time of the deposition. Furthermore, they assert error in permitting State Farm to object to its own questions and answers included in the deposition. Rule 32, WYO. R. CIV. P. alludes to the rules of evidence which are applicable in all actions and proceedings in the courts of this state with limited exceptions, none of which are applicable in this case. WYO. R. EVID. 1101.

In addition to the rules of relevancy, WYO. R. EVID. 401, 402, and 403, WYO. R. EVID. 702 (emphasis added) is pertinent to resolution of the redaction issue:

> If scientific, technical, or other **specialized knowledge will assist the trier of fact to understand the evidence** or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

We have held that it is not the purpose of WYO. R. EVID. 702 to provide blanket admissibility of expert testimony, but instead, to vest the trial court with the discretion to determine whether to exclude testimony deemed

---

1. WYO. R. CIV. P. 32 (emphasis added) provides in pertinent part:

(a) *Use of depositions.*—At the trial * * *, **any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying,** may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

 \* \* \* \* \* \*

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(A) That the witness is dead;

 \* \* \* \* \* \*

(b) *Objections to admissibility.*—Subject to the provisions of Rule 28(b) and subdivision (d)(3) of this rule, **objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.**

 \* \* \* \* \* \*

(d) *Effect of errors and irregularities in depositions.*

 \* \* \* \* \* \*

(3) As to Taking of Deposition.

(A) **Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.**

(B) **Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.**

unnecessary or not helpful to the trier of fact. *Anderson v. Louisiana–Pacific,* 859 P.2d 85, 87 (Wyo.1993). *See Reed v. Hunter,* 663 P.2d 513 (Wyo.1983).

■ A major issue about Cloyd's testimony concerned questions he was asked about State Farm complying with the standard it had established by its advertising. According to the Hatches' theory, State Farm had engaged in an advertising campaign that features the slogan, "Like a good neighbor, State Farm is there." Seven of the ten areas, which were excluded by the trial court, elicited testimony from Cloyd as to whether, in his opinion, State Farm's actions complied with the standard expected of good faith and fair dealing and "a good neighbor." The trial judge pointed out:

> * * * I think using good neighbor as part of the standard changes the standard and I don't think that is appropriate. The legal standard of good faith and fair dealing is not the same as whatever the standard may be for being a good neighbor.

The questions and answers in Cloyd's deposition went beyond the industry standard for good faith and fair dealing in the investigation and handling of insurance claims. They purported to provide his opinion with respect to an extraneous and non-legal standard. The provision in Wyo. R. Evid. 702, concerning opinions of experts offering "specialized knowledge" that "will assist the trier of fact," does not justify such testimony. Cloyd's opinion, as to whether the advertising established a standard and on how a "good neighbor" would act, required no specialized knowledge, nor could it have assisted the jury in understanding the evidence or determining any of the facts in issue. It properly was excluded. His opinion as to how a "good neighbor" would act was beyond the realm of his expertise.

The ruling of the trial court was apt and precise. The district court appropriately redacted testimony by Cloyd in which he was not a qualified expert. Furthermore, through the testimony of Robert C. Haberkorn and John W. Crowe, the Hatches ultimately did get in evidence regarding the industry standard for good faith and fair dealing in investigation and handling of in-surance claims and bad faith in the handling of Hatches' claims. This evidence made the deposition testimony of Cloyd repetitious and cumulative.

■ The other three areas excluded by the trial court from Cloyd's deposition were beyond his expertise; not directed to the industry standard; cumulative; irrelevant; or consisted of information that did not require an opinion of an expert. He had testified at the deposition with respect to reviewing the carrier's operating procedure manual. He stated an opinion about a warning from the State Farm sales agent regarding the difference between actual cash value coverage and replacement cost coverage. He also testified that the process invoked to establish the explanation by the Hatches of how the fire started was not correct. All of this testimony properly was excluded by the trial court in the exercise of its discretion.

■ Relying upon language found in Wyo. R. Civ. P. 32(d)(3)(A) and (B), the Hatches also argue that State Farm waived its right to object because the objections might have been obviated or removed if made at the deposition. Parties cannot be deemed to have waived an objection to relevance at the time of the deposition. The district court did not abuse its discretion when it refused to honor this justification for the utilization of Cloyd's deposition testimony.

■ The Hatches also claim error because the trial court refused to admit into evidence their application for insurance from State Farm. They contend language in that application is relevant to coverage under the policy; relevant to their expectations; and relevant to bad faith. Our rule is that, if an insurance policy is unambiguous, the court's examination is confined to the four corners of the integrated contract, and extrinsic evidence is not admitted to contradict the plain meaning. *Doctors' Co. v. Ins. Corp. of America,* 864 P.2d 1018 (Wyo.1993). Furthermore, the agreement cannot be contradicted or construed contrary to the clear language encompassed in the agreement simply on the basis of asserted extrinsic evidence of the subjective intent of parties to the contract. *Hayes v. American Nat. Bank of Powell,* 784

P.2d 599 (Wyo.1989). We agree with the holding of the South Dakota court that the standard for construing a fire insurance policy evidences an intent to put the entire insurance contract into the hands of the insured in one instrument. *Orr v. National Fire Ins. Co. of Hartford, Conn.*, 50 S.D. 519, 210 N.W. 744, *aff'd*, 52 S.D. 513, 219 N.W. 119 (1928). A Georgia court of appeals has held specifically that an application for a fire insurance policy is not part of the contract. *United Ins. Co. of America v. Hadden*, 126 Ga.App. 362, 190 S.E.2d 638 (1972). We hold that the trial court correctly ruled in excluding the application for the insurance policy from evidence because it was not part of the contract.

■ The last claim of error with respect to the evidence relates to the assertion that the court erroneously admitted into evidence the report of Corinna's juvenile court record along with a report of a psychologist who examined her. The Hatches argue that these records, made three years prior to the fire, were irrelevant, unfairly prejudicial, and subject to Wyoming's confidentiality statutes. The trial court admitted into evidence copies of documents that were in Mr. Hatch's briefcase at the time of the fire, including the reports relating to Corinna about which complaint is made; Mr. Hatch's military records; a report of a twenty-five-year-old psychiatric examination of Mr. Hatch; a love poem written by Hatch to his wife twenty-five years previously; miscellaneous old financial records; insurance coverage; an insurance renewal notice; letters; a book Mr. Hatch was authoring; and information on the purchase of the Hatch home.

In *Furman v. Rural Elec. Co.*, 869 P.2d 136, 145 (Wyo.1994) (citations omitted), we captured the rule relating to decisions as to the admissibility of evidence in this way:

A trial court's decision on the admissibility of evidence will be affirmed by this court unless it is demonstrated that there has been a clear abuse of discretion. This standard applies to trial court decisions concerning the "adequacy of foundation" and relevancy. Furman [the appellant] bears the burden of proving that the trial court acted unreasonably in admitting this evidence.

The court admitted the records relating to Corinna into evidence, but limited their purpose pursuant to WYO. R. EVID. 105 as follows:

THE COURT: Ladies and gentlemen of the jury, [defense exhibit] Q is being admitted for the sole purpose of showing what Mr. Murphy had available to him during his investigation and what items are available to him as part of that investigation. You may also consider them in regard to any motive that Mr. Hatch may have had for starting the fire in as much as there has been an inference or implication at least, that what someone tries to save from fire may reflect that.

You're not to consider any of the documents in Q for any other reason. You're not to consider them for the truth of the matter asserted in any of those documents.

Corinna's records were included within the limited purpose and were appropriately admitted.

The Hatches argue that the probative value of these records was outweighed by the danger of unfair prejudice. They speculate that these records induced the jury to consider Corinna's history as a reflection on the character of her parents and as a determining factor of the likelihood that Mr. Hatch started the fire. They point to nothing in the record to justify this other than speculation, and it clearly is beyond the limited purpose *for which the records were admitted.* We find no error based upon that argument.

■ In addition, the Hatches profess the admission of these records violated Wyoming statutes. They rely upon the provisions of Wyoming's Juvenile Court Act, WYO. STAT. §§ 14–6–201 to –243 (1994), and WYO. STAT. § 6–3–110 (1988) which provides:

An authorized agency or insurance company which receives information pursuant to W.S. 6–3–108 through 6–3–110 shall hold the information in confidence except when release is authorized by the source of the information, by W.S. 6–3–108 through 6–3–110 or by a court of competent jurisdiction.

The Hatches concede the trial court may have been a court of competent jurisdiction under this latter statute, but they argue the court failed to account for pertinent language in WYO. STAT. § 14–6–203, which reads:

> (g) All records made, received or kept by any municipal, county or state officer or employee evidencing any legal process resulting from allegations of a minor's misconduct other than violation of a municipal ordinance are confidential and subject to the provisions of this act. The existence of the records or contents thereof shall not be disclosed by any person unless:
>
> \* \* \* \* \* \*
>
> (ii) The person the records concern is under eighteen (18) years of age and, in conjunction with one (1) of his parents or with the ratification of the court, authorizes the disclosure; or
>
> (iii) The person the records concern is eighteen (18) years of age or older and authorizes the disclosure.

This statute, which is addressed to a state agency, had no application to the court's ruling.

We turn to the claims of error regarding the jury instructions. In *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 831–32 (Wyo.1994), we explained that in reviewing for error with respect to jury instructions, we address the claimed error in both a procedural and substantive context. From the procedural perspective, substantive review will depend upon an appropriate objection, which is required by WYO. R. CIV. P. 51. The purpose is to advise the trial court of the precise nature of the claim so the judicial discretion is appropriately exercised. We

consider the charge as a whole and in the light of the entire record from pleadings through argument to the jury. Our goal is to identify any prejudice, and the standard is whether the charge is a comprehensive, balanced and essentially accurate statement of the law that is not likely to confuse or mislead the jury.

▆▆ In the absence of an objection, we apply the doctrine of plain error as set forth in *Hampton v. State,* 558 P.2d 504, 507 (Wyo. 1977) (citations omitted):

> [T]his Court must be able to discern from the record, without resort to speculation or equivocal inference, what occurred at trial, \* \* \*. Further, the proponent \* \* \* must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way. \* \* \* [T]he error or defect must adversely affect some substantial right of the accused in order to avoid the application of the harmless error concept \* \* \*.

In *Goggins v. Harwood,* 704 P.2d 1282, 1291 (Wyo.1985), we quoted from *Gore v. State,* 627 P.2d 1384, 1388–89 (Wyo.1981), the ultimate consideration:

> *Thus, unless an instruction can be said to have plainly caused a fundamental prejudice to the \* \* \* [party's] legal rights, we will not overturn it on appeal unless it was objected to during the trial and a proper instruction was offered in its place.*

▆▆ The Hatches' first claim of error regarding the jury instructions, attacks the instructions relating to the arson defense asserted by State Farm.[2] In briefing their

2. Those instructions are:

**INSTRUCTION NO. 7**

 \* \* \* \* \* \*

You are, therefore, instructed that the plaintiffs are entitled to recover $33,275.00 from defendant State Farm Fire and Casualty Company, unless State Farm has proven its arson defense by a preponderance of the evidence. If State Farm proves that defense, as defined in other Instructions, your verdict must be for the defendant and against all plaintiffs on the claim for policy benefits for damage to personal property.

 \* \* \* \* \* \*

**INSTRUCTION NO. 8**

In order to establish its defense of arson to the policy benefits claim, the defendant State Farm Fire and Casualty Company must prove by a preponderance of the evidence that the fire was intentionally started by Frank J. Hatch, III.

**INSTRUCTION NO. 28**

Defendant, State Farm, raises an arson defense to the Plaintiffs' action to recover for a fire loss under their policy. Plaintiffs are entitled to prevail on the arson defense if you find that the cause of the fire was accidental and thus not incendiary.

objection to these instructions, the Hatches argue that the insurance policy from State Farm provided only two defenses. They contend that State Farm advanced a third defense called the "arson defense," and the district court erroneously allowed the jury to be instructed on this third, nonexistent defense.

The insurance policy discloses that it can be voided under the following circumstances:

**Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

\* \* \* \* \* \*

**Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

The Hatches argue that the instructions are erroneous because the language of the insurance policy neither actually nor impliedly provides an arson defense. They contend that the instructions on arson are erroneous as a matter of law because the district court failed to instruct on the crime of second degree arson and eliminated the issues of motive and intent contrary to the provisions of the policy. The Hatches also assert that the term "arson" is extremely prejudicial and should not have been used without a definition in instructing the jury. They also claim that the court erroneously implied in these instructions that the Hatches had the burden of proving the fire was accidental in order to overcome the arson defense of State Farm.

State Farm's response is that the Hatches are not entitled to raise objections on appeal to Instructions 7 and 28 since they did not object at the instruction conference. State Farm points out that Instruction 28 was a version of the Hatches' proffered Instruction No. 74. State Farm argues the Hatches did not object to the use of the term "arson" during the trial and even submitted some eleven instructions that incorporated the term "arson," and they are prohibited from complaining about the term at this time.

Examination of the record discloses an objection to Instruction No. 8 at the conference by counsel for the Hatches stating, "it says here intentionally started [by Frank J. Hatch, III]. It doesn't say deliberately, I suppose intentionally if you dump a can of gasoline, it's intentional. If you intend to dump it, whether you intend to start the house or not I think its terribly, terribly prejudicial and clear error." We understand this comment to be a statement that one may intentionally dump a can of gasoline without intending to start a fire. The Hatches did not present that theory at the trial, and the facts do not support such an interpretation. The Hatches' contention throughout the trial was that the dog tipped the gas can over, not that Frank J. Hatch, III intended to dump the gasoline but did not intend to start a fire. The objection was not pertinent in the context of the issues tried.

 While the policy does not specifically allude to an arson defense, it does state that coverage is provided only for "**accidental** direct physical loss to property." (Emphasis added). Arson is not accidental, but instead, is an intentional act or conversely a nonaccidental direct physical loss to property. The policy also provides that it is voided when "you [the insured] or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits \* \* \*." In their complaint the Hatches sued State Farm for "the sum of at least $93,-525.00 under the said policy coverage \* \* \*." In the language of the policy, the action was brought "for the purpose of obtaining insurance benefits." Instruction No. 8 accurately states that State Farm was required to prove the fire was started intentionally by Frank J. Hatch, III in order to establish its defense of an intentional act. That instruction does not require that State Farm prove the crime or elements of the crime of arson. Neither does the policy require any element of motive other than the purpose of obtaining insurance benefits. We are satisfied that Instruc-

tion No. 8 does not erroneously state the law in this case.

The Hatches raised no proper objection to Instructions 7 and 28, and in fact, an instruction similar to Instruction No. 28 was offered by the Hatches. As to these instructions, plain error must be established. Giving full scope to the arguments of the Hatches, they fail to demonstrate a record that clearly and unequivocally reflects the facts complained of, a transgression of a clear rule of law, or prejudice.

State Farm was not required in this civil trial to establish the elements of second degree arson. The court instructed that the Hatches could not recover if State Farm established by a preponderance of the evidence that the fire was intentionally started. The only obligation on State Farm was to establish that the fire was intentionally set and not that it constituted arson under the criminal code. The jury also was advised there could be no recovery if State Farm established that fact, and in the alternative, State Farm would be liable under the policy if the cause of the fire was accidental. Instruction 28, read in conjunction with Instructions 7 and 8, accurately and clearly instructed the jury with respect to the burden of State Farm to establish the "arson defense." The "arson defense" was implicitly and mutually agreed upon by the parties as disclosed by the record and the proposed jury instructions. There is no reference to the "nonaccidental direct physical loss to property," which the Hatches now claim should have been invoked. While the Hatches claim prejudice from the use of the term arson, they have not been successful in demonstrating actual prejudice. There was no error with respect to Instructions No. 7, 8, and 28.

■ Hatches also assert error in the giving of Instruction No. 22 which reads:

### INSTRUCTION NO. 22

During the course of this trial, you have learned that Frank J. Hatch, III, was charged with arson, and was acquitted after a criminal trial. You may not consider these facts in your deliberations and may make no inferences therefrom. A different burden of proof applies in criminal cases than in civil cases.

The Hatches assert this instruction unfairly and erroneously removed the truth from the jury's consideration of State Farm's bad faith in dealing with the county attorney, and eliminated Hatch's acquittal as a factor in the jury's mind. The objection lodged at trial was, "I think the fact that he was acquitted minimizes damages from that point on. Are we prohibited from mentioning that?"

■ Evidence of an acquittal of criminal charges is not relevant in a subsequent civil trial relating to the same incident. *Shatz v. American Surety Company of New York,* 295 S.W.2d 809 (Ky.1955); *State v. Desirey,* 909 S.W.2d 20 (Tenn.Crim.App.1995). *See Greenberg v. Aetna Insurance Company,* 427 Pa. 494, 235 A.2d 582 (1967). This rule is applicable because the burden of proof is different in the criminal case, and a jury might conclude that innocence had been established by a preponderance of the evidence, even though the correct proposition is that guilt had not been established beyond a reasonable doubt. The rule is applicable to cases involving a civil action following an acquittal on a charge of arson. *Bobereski v. Insurance Co. of Pennsylvania,* 105 Pa.Super. 585, 161 A. 412 (1932); *Wheat v. Continental Cas. Co.,* 652 S.W.2d 345 (Tenn.1983); *Tennessee Odin Inc. Co. v. Dickey,* 190 Tenn. 96, 228 S.W.2d 73 (1950). *See Girard v. Vermont Mut. Fire Ins. Co.,* 103 Vt. 330, 154 A. 666 (1931) (record of conviction is not admissible).

The jury instruction regarding Hatch's acquittal in this case became essential because incorporated in the Hatches' theory of bad faith was a claim that State Farm improperly participated in Mr. Hatch's criminal prosecution. The task of the jury in the civil trial was to address the allegation of bad faith not the result of the criminal trial. Drawing inferences in favor of or against either party because of the result of the criminal case would not be appropriate. We perceive Instruction No. 22 as adeptly handling the delicate circumstance of the criminal trial which had been injected in the evidence without tilting the balance in favor of the Hatches or

State Farm. A further instruction upon the difference of the burden of proof in a civil trial, which the Hatches suggest would have been proper, would simply have added unnecessary language and confusion to this instruction. Jury Instruction 22 correctly stated the law in the circumstances of this case, and the Hatches have demonstrated no prejudice. There is no error to be found in the giving of this instruction.

 The last asserted error with respect to instructions attacks Instruction No. 30 which reads:

### INSTRUCTION NO. *30*

Plaintiffs may not recover damages for any injury they would have sustained as a result of the fire or the criminal prosecution even in the absence of State Farm's alleged bad faith claims handling.

According to the Hatches, this instruction was erroneous because when combined with Instruction No. 22, it instructed the jury to ignore all damages that the Hatches might have sustained even in the absence of State Farm's bad faith. The Hatches did not object to this instruction at trial, and the plain error doctrine again must be invoked. Perhaps Instruction No. 30 could have been drawn more artfully, but it is an accurate statement of the law. We held in *Hatch I,* 842 P.2d at 1096, that State Farm "demonstrated that appellants' [Hatches'] claim was 'fairly debatable' and that no liability resulted from the denial of this claim." *Hatch I* also held, as a matter of law, that State Farm was not liable for Hatch's criminal prosecution. This last instruction simply required a causal connection between injuries and the conduct of State Farm, without regard to injuries that would have been sustained as a · result of the fire or the criminal prosecution in the absence of bad faith on the part of State Farm in handling the claims.

 In *Triton Coal Co. Inc., v. Mobil Coal Producing, Inc.,* 800 P.2d 505, 511 (Wyo.1990) we said:

" * * * Parties have not only the right but the duty to offer instructions. In the absence of submission of a proper written instruction, any claimed error is deemed to have been waived."

Counsel for the Hatches ultimately submitted 105 jury instructions, made unclear objections, and generally were antagonistic toward the entire process. While the jury was waiting for instructions, counsel for the Hatches participated in the process by submitting 80 instructions "covering every issue imaginable, and without any semblance of order." This does not manifest the professional practice we expect from attorneys in Wyoming. Our examination of the record and the proposed jury instructions demonstrates that counsel for the Hatches went beyond the duty to serve as advocates. We detect a loss of objectivity and conduct that borders upon unprofessional in burdening the jury instruction process. It is difficult to give credence to the complaints of error now asserted.

We hold that in the absence of the submission of some proper written instruction, appellants have waived any claim of error. We further hold that upon proper analysis, the jury instructions, when taken as a whole, fairly and accurately state the law in this case. The district judge was patient but resolute in his effort to provide the jury with accurate instructions. The district court committed no error in instructing the jury with respect to arson as a defense, Mr. Hatch's acquittal on the criminal charge of arson, or the damages.

This brings us to the point of error in which the Hatches attack the granting of State Farm's motion for directed verdict on the issues of intentional infliction of emotional distress and its damages. The motion was improperly styled because since 1993, Wyo. R. Civ. P. 50(a)(1) has identified a directed verdict as a judgment as a matter of law. It provides that the court may determine an issue against a party when "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue," and can grant a motion for judgment as a matter of law on a claim that cannot be maintained without a favorable finding on that issue.

 Upon review of the judgment as a matter of law, as we did in reviewing directed verdicts, we consider the evidence

favorable to the party against whom the motion was directed, affording it all favorable inferences. *See Coulthard v. Cossairt,* 803 P.2d 86, 91 (Wyo.1990). The granting of the motion is proper when only one conclusion could be reached by reasonable jurors without weighing the evidence or considering credibility. *Coulthard,* 803 P.2d at 91. We afford no deference to the decision of the trial court, and such motions should be cautiously and sparingly granted. *Coulthard,* 803 P.2d at 91.

The Hatches invoke our decision in *Hatch I* in which we reversed the grant of summary judgment by the district court with respect to the claim for intentional infliction of emotional distress. We said, "material factual disputes [exist] and that it was improper to grant a summary judgment * * *." *Hatch I,* 842 P.2d at 1099. The conclusion drawn by the Hatches is that it is the law of this case that the jury should determine whether State Farm and its employees intentionally inflicted emotion distress on the Hatches. They also contend that when the evidence is viewed in the light most favorable to the Hatches, particularly the evidence relating to the conduct of the claims agents for State Farm, it is apparent that Kitchens and Murphy committed the tort of intentional infliction of emotional distress.

In *Leithead v. American Colloid Co.,* 721 P.2d 1059, 1065–67 (Wyo.1986), we joined a majority of jurisdictions when we adopted RESTATEMENT (SECOND) OF TORTS § 46 (1965) as defining the tort of intentional infliction of emotional distress in Wyoming. The comments to Section 46 advise that whether the conduct is so extreme and outrageous as to justify recovery is committed to the court in the first instance. Further, whether severe emotional distress can be found from the evidence is committed to the court.

These are the principles that we invoke in this case, and we first address the Hatches' argument that *Hatch I* required the submission to the jury of the claim of intentional infliction of emotional distress. The Hatches have disregarded three safeguards which prevent issues being submitted to a jury when the evidence is insufficient. The first of those is found in Comment "*h*" RESTATEMENT (SECOND) OF TORTS § 46 (1965) where it is said, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." The next safeguard is set forth in Comment "*j*" which provides for "the court to determine whether on the evidence severe emotional distress can be found * * *." The third is set forth in WYO. R. CIV. P. 50(a)(1) which states, "[i]f during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law * * *." The purpose of the latter rule is to permit the trial court to take from the consideration of the jury, cases in which the facts are sufficiently clear to lead to a particular result under the law. *Carey v. Jackson,* 603 P.2d 868 (Wyo. 1979).

In *Hatch I,* the record in the district court and this court consisted of the materials which had been produced in connection with the summary judgment and was limited to deposition testimony. We stated, "appellants demonstrated that there were material factual disputes and that it was improper to grant a summary judgment on appellants' cause of action for violation of a duty of good faith and fair dealing." *Hatch I,* 842 P.2d at 1099. In the trial of these claims, the district court had the benefit of the complete testimony of the Hatch family, insurance experts, and the entire case in chief. We hold that the district court not only had the authority but the duty to make the threshold determination in this case pursuant to Comments "*h*" and "*j*" to RESTATEMENT (SECOND) OF TORTS § 46 (1965) and WYO. R. CIV. P. 50. The court was not required by our decision in *Hatch I* to send the claim of intentional infliction of emotional distress to the jury.

We next address the propriety of the action of the district court in granting judgment as a matter of law. According to WYO. R. CIV. P. 50(a)(1), we must determine that

there was "no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue * * *." The first consideration is whether the conduct was extreme and outrageous. We look to RESTATEMENT (SECOND) OF TORTS § 46 cmt. *d*, p. 73 (1965), which states:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The Hatches testified, with respect to the conduct of State Farm, that Kitchens had stated "you're not going to get what you think you're going to get." They stated Kitchens required the Hatch family to fill out a detailed inventory of every item in their house on their claims forms because the value of their personal property exceeded the limits of their coverage. The Hatches asserted that this detail produced 272 pages and the 60 day time constraint required them to take sick leave, vacation, weekends, and evenings to complete it. They testified they worked in the cold and dark using flashlights to complete the claims form. Mrs. Hatch testified that people were at the house without permission and without notice on several occasions. The Hatches claim that State Farm conducted an excessive number of interviews of family members.

In addition, the Hatches point out that although the fire occurred in August of 1987, State Farm had not paid their claim by the end of October 1987. Mrs. Hatch testified State Farm implied they would cancel the insurance policy if she did not comply with the "cooperation clause" of the insurance contract. She also testified that the State Farm attorney who interviewed her under oath was "sarcastic," "aggressive," and "hostile." The Hatches also asserted that they complied with State Farm's requests, but State Farm failed to give them copies of some reports they had requested, and in fact,

State Farm provided copies of some reports and investigation materials to the county attorney for the arson prosecution of Mr. Hatch. They also stated that State Farm withheld a report from Northern Gas which contained exculpatory information.

Additional evidence of emotional distress was claimed with respect to an interview by an attorney of Mrs. Hatch, who said Murphy, present at the interview, intimidated her by staring at her the entire time. She asserted that Murphy "stared up and down her [daughter's] body" when Corinna's statement was taken, causing both her and her daughter to feel terribly uncomfortable. Mrs. Hatch testified in this way about her emotional distress:

> It upset me quite a bit to think that a man that I didn't know had gone through my drawers, my personal things, my personal clothing, my daughter's personal things, her clothing. I know Mr. Reeves made light of feeling like a rape victim, but when somebody who has power forces intimacy you would never allow if you had the choice, I don't know how else to describe it. It was just devastating to me and it was devastating to my daughter to think that a strange man had sat in our rooms and gone through our things. And they had a woman agent in the basement who could just as easily have done it while Mr. Murphy did the downstairs. I think they would realize that any woman would feel that way about having someone she didn't know go through her underwear. It still makes me feel terrible.

She went on to state this was a "rough time," "an ordeal," they were "still under stress," "snapping at each other," and the fact that it had been "a really difficult seven years."

Mr. Hatch testified he did not recall any of the family seeking counseling as a result of severe emotional distress. Corrina, the daughter of Mr. and Mrs. Hatch, testified her mother "was really upset and crying and disgusted again," "crying again," "[crying] quite frequently," and was "under a lot of stress." Corinna testified that she was "pretty repulsed [by Murphy going through her dresser drawers]." Robert, a son of Mr. and Mrs. Hatch, who was ten years old when

the fire occurred, testified that his mother was upset and "a lot of times she cried." He heard Corinna and his mother talking about the fire and knew that "was upsetting them." Michael, Robert's twin brother, testified members of the family were having some tough times after the fire. He stated, "my mom, she was emotional, she cried every once in a while. And my dad, he wouldn't express his feelings like my mom, he would usually isolate himself." Michael also testified to the "family being stressed."

In resolving the issue of entry of judgment as a matter of law, we turn to the principles articulated in *Svalina v. Big Horn Nat. Life Ins. Co.*, 466 P.2d 1018, 1020 (Wyo.1970), that the evidence of the plaintiff will be taken as true with all reasonable inferences and intendments that can be drawn from it. If we accept the evidence offered by the Hatches as true with all reasonable inferences and intendments that can be drawn, there is insufficient evidence of the requisite misconduct by State Farm. Certainly State Farm's conduct may be characterized as insensitive or inappropriate at times, but the district court could reasonably find that conduct was not so outrageous in character or extreme in degree to reach the level of being beyond all possible bounds of decency. Neither was it atrocious and utterly intolerable in a civilized community. Proof of outrageous conduct essential for the separate tort of intentional infliction of severe emotional distress is inadequate in this record. These facts do not lead a reasonable member of the community to exclaim "outrageous!"

We conclude that evidence of crying, being upset and uncomfortable is insufficient to demonstrate severe emotional distress that attains a level no reasonable person could be expected to endure. RESTATEMENT (SECOND) OF TORTS § 46 cmt. *j* (1965). While the stress the Hatches experienced is not to be minimized, it is typical of the stress all people are expected to endure under the circumstances. The district court properly granted State Farm's motion for directed verdict or judgment as a matter of law relating to the charges of intentional infliction of extreme emotional distress.

The Hatches also assert error in the granting of State Farm's motion for a directed verdict with respect to punitive damages. Their argument is that if the evidence is viewed in a light most favorable to them, State Farm's conduct was willful and wanton and subject to punitive damages. They argue that the district court erred in finding that no reasonable jury could find willful and wanton misconduct in this instance. The Hatches assert that a number of other courts have considered similar issues as are presented in this case and have concluded that the issue of punitive damages should be resolved by a jury. We are satisfied that each one of those cases is distinguishable on its facts. In each instance, evidence was found to be sufficient either to support the claim of bad faith or sufficient to submit the bad faith question to the jury. Given our holding that the district court reasonably could find first, that the conduct by State Farm did not reach the requisite heights to be described as outrageous, extreme, atrocious, utterly intolerable, nor beyond all possible bounds of decency, and second, the Hatches did not suffer the requisite emotional distress for a successful claim of intentional infliction of severe emotional distress, the issue of damages including punitive damages becomes moot in this case.

Hatches also contend that they are entitled to attorneys fees pursuant to WYO. STAT. § 26–15–124 (1991), if they prevail on the merits. They have failed to prevail on the merits, and consequently we will not consider the entitlement to attorneys fees further. We affirm the judgment of the district court denying such fees.

The Hatches rely upon cumulative error as a final contention. In the absence of any prejudicial error, a claim of cumulative error does not lie. *Vit v. State*, 909 P.2d 953 (Wyo.1996).

We find no error in this record. The Order on Directed Verdict Motion and the Judgment on Jury Verdict is affirmed.

O'BRIEN, District Judge, concurs specially, with whom LEHMAN, Justice, joins.

I agree with the majority and concur in the opinion of the court. I write specially only to

underscore that part of the majority opinion dealing with the behavior of counsel.

This case calls to mind the story of the senior attorney advising a new associate: "When you have compelling facts, pound on those facts. When the law is agreeable to your position, pound on the law. When you have neither favorable facts nor law, pound the table." It is less amusing than unsettling.

The trial judge had considerable difficulty in keeping this case on track and the attorneys focused. The judge, who has a reputation for being patient and accommodating, revealed his frustration in an opinion letter where he observed:

> It is true that the attitude and conduct of counsel throughout the pretrial proceedings and the trial made the job of the Court extremely difficult. And it is also true that the difficulties were chiefly the fault of the Plaintiffs' lead counsel. All attorneys participated to one degree or another in this unprofessional strife, and there was little attempt by anyone to calm the waters. But it was the Plaintiffs' lead counsel who constantly saturated every motion, every argument and every hearing with personal attacks on opposing counsel.
>
> Accompanying this extreme personal animosity was a near religious fervor that manifested itself as a belief in the moral superiority of the Plaintiffs' cause, and the moral depravity of the Defendants and their attorneys. This blinded Plaintiffs' counsel to the realities of the case, and prevented a realistic appraisal of the evidence.

In spite of considerable rhetoric to the contrary, trials, particularly jury trials, are imperfect engines of justice. For routine cases the trial process works reasonably well; it yields rough justice within such practical and financial constraints as we are willing to abide. However, experience teaches that as cases approach the margins the trial machinery frequently sputters and oftentimes fails. Marginal cases include those with highly technical, complex or convoluted facts. A trial is not a didactic paradigm and, given the limits of time, resources and procedure, extremely intricate matters are sometimes beyond the ken of a judge or jury. Other cases are on the margin because they involve celebrity participants, severe consequences, extreme or peculiar circumstances, inordinate media attention or highly emotional issues. As to the latter the magnifying glass of close scrutiny and the attendant hype are simply inevitable consequences of a free society with open institutions. Without radical change in our approach to the trial process we have no choice but to accept imperfections, inconsistencies, and even occasional injustice. But an ominous problem emerges, one that is not the necessary product of confounding facts or unveiled process.

A trial should be a rational exercise, not an emotional experience. When counsel intentionally drive an otherwise routine case to the margins by infecting the trial with personal issues or by purposefully seeking to supercharge emotions, alert observers quickly recognize that the object is not justice, but victory. The ethical obligation to zealously serve client interests is tempered by the opposing, but no less imposing, obligation to act within the limits of the law—not merely the letter, but also the spirit, of the law. Any failure to appropriately and consistently measure duty to clients against duty to the profession perpetuates the "hired gun" image some lawyers cultivate and we all must live with. Worse, it sustains a popularly held conception that our professional ethic accepts the notions that success justifies, and occasionally necessitates, excessive zeal and that the cost of victory is irrelevant. Finally, such conduct reinforces the stereotype of the avaricious plaintiff spurred to trial by even more venal attorneys. When a case is measured, not by the merit of the cause, the quality of the evidence, or the logic of the arguments, but by the level of invective, something is amiss. A trial then becomes an ordeal which is neither dignified nor appropriate and, predictably, the result reflects the performance; the process is demeaned, as are the participants.