2002 WY 114

**Lester A. GORE and Kathleen E. Gore, Appellants (Plaintiffs),**

v.

**Donald N. SHERARD, Stephen N. Sherard, Rex E. Johnson; Flying 13 Land Co.; and 121 Land Company, Inc., Appellees (Defendants).**

**No.  01–136.**

Supreme Court of Wyoming.

July 19, 2002.

Representing Appellants: Fred W. Phifer, Wheatland, WY. Argument by Mr. Phifer.

Representing Appellees Sherards and Johnson: Paul J. Hickey and Roger C. Fransen of Hickey, Mackey, Evans and Walker, Cheyenne, WY. Argument by Mr. Hickey.

Representing Appellees Flying 13 Land Co. and 121 Land Co.: Douglas W. Weaver, Wheatland, WY. Argument by Mr. Weaver.

Before HILL, C.J., and GOLDEN, LEHMAN,* and KITE, JJ., and ROGERS, D.J.

ROGERS, District Judge.

[¶ 1] At the close of appellants' case, the trial court granted the appellees' motion for a directed verdict, more properly referred to as a judgment as a matter of law. W.R.C.P. 50(a). From that order this appeal has been taken.

[¶ 2] We affirm the trial court's decision as herein modified.

* Chief Justice at time of oral argument.

## ISSUES

[¶ 3] Appellants state the issues as follows:

1. Did the Trial Court err when it directed verdict in favor of the Appellees finding that there were no questions of fact for a jury to decide?

2. Did the Trial Court err when it allowed hearsay testimony from a witness which contradicted the sworn testimony of the individual who originally made the statement?

3. Did the Trial Court err in awarding costs not allowed by the U.R.D.C. Rule 501 or that the Wyoming Supreme Court previously determined were not taxable as costs?

4. Did the Trial Court err in finding there was no valid contract or business expectancy between the Appellants and Virginia Gibb after 20 years of leasing the property and the improvements placed on the property during that time?

Appellees state the issues:

I. Did the trial court properly grant the appellees' motion for judgment as a matter of law at the conclusion of the appellants' direct case?

II. Did the trial court err by allowing trial testimony of Don Sherard which was solicited by appellants' counsel?

III. Did the district court err in awarding costs?

## FACTS

[¶ 4] Appellants Lester and Kathleen Gore (the Gores) moved onto the Donaldson Ranch (the ranch) in Platte County, Wyoming in November 1973 as subleasees, and continued to live on the 2,339 acre ranch until the time of trial. In 1976, the Gores executed a written lease with a six-year term with the then owner of the ranch, Ross Donaldson. The Gores moved a mobile home onto a permanent foundation on the ranch in 1973 and lived there to the date of trial. The Gores thereafter executed a series of written and oral leases with the owners of the ranch through the spring of 1996. The last written lease executed by the Gores ended in 1993. The ownership of the ranch changed as the years passed after the death of Ross Donaldson. In 1996 and until the ranch sold in 1997, Virginia Gibb owned a two-thirds interest in the ranch, and the remaining one-third interest was owned by her nephews, primarily James Donaldson, with a minor interest owned by Russell Donaldson (the Donaldsons).

[¶ 5] The Gores used the ranch for a cattle operation. The rent paid by the Gores was gradually increased over the years to the annual amount of $6,000, which rent was seldom paid on time and was usually paid in the fall after cattle were sold. Some of the written leases had contained options to purchase and/or rights of first refusal granted to the Gores, none of which had ever been exercised. The Gores made many improvements to the ranch over the years. Buildings were repaired, fences built, and wells drilled. Some rent was excused in payment for some of the improvements made by the Gores.

[¶ 6] In August of 1996, the Gores were occupying the ranch. They had not paid any rent for 1996, and the leases of the ranch had always commenced on May 15 of each year. Lester Gore inquired of Virginia Gibb in August 1996 as to whether she was interested in selling the ranch to him, and she replied she was not. Virginia Gibb and Lester Gore discussed a new written lease at lunch and then went to the office of Mrs. Gibb's attorney, defendant Stephen N. Sherard, where the discussion continued. Stephen Sherard thereafter prepared a draft of a lease agreement which he thought contained the terms agreed to by Gibb and Lester Gore, including a one-year term and no option to purchase. Lester Gore did not agree with the terms of the draft lease and so informed Stephen Sherard, who communicated with his client, Virginia Gibb, drew another lease, and wrote Lester Gore, informing him that Virginia Gibb insisted on a one-year lease term. This second draft of the lease contained an option price of $200 per acre. Sherard forwarded the second draft to Virginia Gibb, Lester Gore, and James Donaldson. James Donaldson signed the lease and returned it to Sherard. It was never signed by Virginia Gibb and Lester Gore. In the fall of

1996, Lester Gore had a lease drafted by his attorney and presented it to Virginia Gibb, who refused to sign it. Lester Gore never spoke to Virginia Gibb from December 1996 until April 1997; and, by his own admission, the negotiations for a new lease had come to a standstill in the fall of 1996. Stephen Sherard never heard back from Gibb and Gore and assumed that the deal was over. Stephen Sherard had no further contact with Virginia Gibb regarding the lease agreement.

[¶ 7] In March 1997, Virginia Gibb went to see defendant Donald N. Sherard at his office·for advice concerning a credit card problem. During their conversation, Gibb complained to Don Sherard that the Gores had not paid her the rent for the ranch and that she was anxious to sell the ranch and to separate herself from the relationship with the Gores. Don Sherard expressed interest in the ranch and obtained instructions from Gibb on how to contact James Donaldson, which Sherard then did. Don Sherard then reviewed some of the prior lease documents and consulted with his son, Stephen Sherard, and their law partner, defendant Rex E. Johnson, about the purchase of the ranch. The three lawyers, through the two defendant corporations owned by them, then purchased the ranch from Virginia Gibb and the Donaldsons in early April 1997 for $350,000, paid the $6,000 rent due from the Gores, and took an assignment of the right to collect the rent from the Gores.

[¶ 8] Rex Johnson then called Lester Gore and informed him of the sale and that $6,000 in rent was due. During that conversation, Lester Gore acknowledged to Johnson that he did not have a lease on the ranch. Johnson and Gore agreed that the Gores could remain on the ranch until September 1, 1997, and that Johnson could pasture some cattle on the ranch during the summer of 1997. The Gores paid the rent in late April 1997.

[¶ 9] Lester Gore then obtained financing and bought the ranch from the defendant corporations in late June 1997 for $600,000. The Gores immediately placed the ranch on the market and subsequently sold it, along with a small neighboring ranch, for $1,400,000, $1,100,000 of which was allocated to the Donaldson ranch.

[¶ 10] The Gores thereafter filed this action against the three lawyers, their law firm, and the two corporations, seeking damages for tortious interference with a contractual relationship and business expectancy and punitive damages. Following the presentation of plaintiffs' case in chief at the trial, the trial court granted defendants' motion for judgment as a matter of law.

## STANDARD OF REVIEW

[¶ 11] This court has previously explained the standard that applies for review of a trial court's decision to grant a motion for judgment as a matter of law:

> In reviewing a judgment as a matter of law, we evaluate the record without affording deference to the trial court's views. *John Q. Hammons Inc. v. Poletis,* 954 P.2d 1353, 1356 (Wyo.1998); *Hatch v. State Farm Fire and Casualty Company,* 930 P.2d 382, 395 (Wyo.1997). A judgment as a matter of law is appropriate when reasonable jurors could reach but one conclusion as to the verdict. *Hatch,* 930 P.2d at 395. We regard the nonmoving party's evidence as being true, and we give that party the benefit of all reasonable inferences that may be drawn from the evidence. *Garaman, Inc. v. Williams,* 912 P.2d 1121, 1123 (Wyo.1996). Additionally, we do not weigh the evidence or assess the credibility of the witnesses. *John Q. Hammons Inc.,* 954 P.2d at 1356. A judgment as a matter of law deprives the opposing party of the opportunity to have the jury determine the facts, and the court should, therefore, use caution in granting such a judgment. *Id.; Hatch,* 930 P.2d at 395.

*Anderson v. Duncan,* 968 P.2d 440, 442 (Wyo.1998). More recently this court has said:

> Our standard of review is the same whether it arises in the procedural context of a motion for judgment as a matter of law prior to the submission of the case to the jury (formerly, a motion for a directed verdict) or in the context of a renewed motion for judgment as a matter of law

after the jury has returned a verdict (formerly, a motion for judgment notwithstanding the verdict). We undertake a full review of the record without deference to the views of the trial court. The test to be applied is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached. We view the evidence in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences that may be drawn from the evidence. When the facts permit the drawing of more than one inference, it is for the jury to choose which will be utilized. Since a judgment as a matter of law deprives the party opposing the motion of a determination of the facts by a jury, it should be cautiously and sparingly granted.

*Rudy v. Bossard*, 997 P.2d 480, 485 (Wyo. 2000), quoting *John Q. Hammons Inc. v. Poletis*, 954 P.2d 1353, 1356 (Wyo.1998) (citations and footnote omitted).

## DISCUSSION

### 1. INTENTIONAL OR TORTIOUS INTERFERENCE WITH A CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE

[¶ 12] Intentional or tortious interference with a contract is defined as:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d 1245, 1253 (Wyo.1998), citing *Restatement, Second, Torts* § 766 at 7 (1979). *See also Davenport v. Epperly*, 744 P.2d 1110, 1111–12 (Wyo.1987); *Toltec Watershed Improvement District v. Johnston*, 717 P.2d 808, 813 (Wyo.1986).

[¶ 13] This court has previously set out the elements that must be proved to support a claim for tortious interference with a contract or business expectancy.

In Wyoming, the following elements must be demonstrated to sustain a cause of action for tortious interference with a contract or prospective economic advantage: (1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 955 fn. 1 (Wyo.1999); *see also Examination Management Servs., Inc. v. Kirschbaum*, 927 P.2d 686, 697 (Wyo.1996); *Dynan v. Rocky Mountain Fed. Sav. & Loan*, 792 P.2d 631, 641 (Wyo.1990); *Toltec Watershed Improvement Dist. v. Johnston*, 717 P.2d at 813–14.

[¶ 14] The plaintiff has the burden of proving the four elements of intentional or tortious interference with a contract. *Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d at 1253. Whether interference with a contract was improper is a question of fact. *Examination Management Servs.*, 927 P.2d at 698. At trial Gores failed to present evidence which would support a finding that a valid contractual relationship or business expectancy existed for purchase of the Donaldson Ranch, much less that appellees knew of any such contractual relationship or business expectancy or intended to interfere with it.

[¶ 15] The evidence developed by Gores at the trial was that the oral lease between the parties had expired, contract negotiations had stalled and had not proceeded for months, that there was no meeting of the minds or agreement on the terms of any future contract, and that Sherards and Johnson did not know of any contractual relationship or business expectancy. The Gores' unilateral belief and hope that a contact would result was inadequate to sustain a cause of action. A reasonable probability of a contract is shown if there is a reasonable assur-

ance of a contract in view of all the circumstances. In this case there was no such reasonable probability.

[¶ 16] In fully reviewing the record without deference to the views of the trial court, viewing the evidence in the light most favorable to the Gores, and giving Gores the benefit of all favorable inferences which may be drawn from the evidence, it is clear that Gores very simply failed to meet their burden of proof of the four elements of a cause of action for tortious interference with a contractual relationship or business expectancy. The trial court was fully justified in granting the motion for judgment as a matter of law because reasonable jurors could have reached but one conclusion as to the verdict.

## 2. HEARSAY TESTIMONY

[¶ 17] Gores argue that the trial court erred when it allowed hearsay testimony from a witness which contradicted the sworn testimony of the individual who originally made the statement. The testimony in question was elicited by counsel for the Gores in his cross examination of Don Sherard, during which counsel asked Mr. Sherard to tell him the substance of his conversation with Virginia Gibb about the purchase of the Donaldson Ranch. Mr. Sherard responded to the question and related some of his conversation with Gibb, at which point the trial court interjected with the observation that the testimony was hearsay and directed counsel to proceed with his next question. After the trial court's comment, Gores' counsel elicited additional testimony from Don Sherard. Counsel did not object in any way to this testimony at the trial, nor did he ask for it to be stricken. Counsel for appellants now challenges the testimony for the first time on appeal. All of the disputed testimony was a fair response to the questions asked by Gores' counsel.

[¶ 18] Hearsay evidence admitted without objection may be considered and given its natural probative effect. *Meredith GMC, Inc. v. Garner*, 78 Wyo. 396, 328 P.2d 371, 374 (1958). Having elicited the "hearsay" testimony by his own questioning, without objecting thereto or moving to strike,

counsel cannot now come to this court and complain about its admissibility.

## 3. COSTS

[¶ 19] Gores argue that the trial court erred in awarding certain costs. After the trial court granted their motion for judgment as a matter of law, appellees sought costs in the amount of $8,594.73. The parties briefed the issues regarding costs and, after conducting a hearing, the trial court awarded appellees the sum of $1,728.21 in costs. Gores now challenge that portion of those costs dealing with the depositions of Lester Gore and James Donaldson, a transcript of a motion hearing, as well as certain appearance fees for court reporters and duplicating costs.

[¶ 20] An award of costs is reviewed for an abuse of discretion. *Snyder v. Lovercheck*, 992 P.2d 1079, 1084 (Wyo.1999); *Coulthard v. Cossairt*, 803 P.2d 86, 93 (Wyo. 1990).

> We recently clarified the definition of abuse of discretion when we said the core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236, 1238 (Wash.App.1985)); *Basolo [v. Basolo]*, 907 P.2d [348] at 353 [ (Wyo.1995) ]. We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious.

*Snyder v. Lovercheck*, 2001 WY 64, ¶ 6, 27 P.3d 695, ¶ 6 (Wyo.2001), citing *Cobb v. Cobb*, 2 P.3d 578, 579 (Wyo.2000) (quoting *Thomas v. Thomas*, 983 P.2d 717, 719 (Wyo.1999)).

[¶ 21] Gores argue that the award of the deposition costs was contrary to the provisions of W.U.R.D.C. 501(a)(3)(D)(i)(I-IV). Gores fail to take cognizance of the qualifying phrase that follows the enumer-

ation in those subsections of the rule to the effect that those criteria are guidelines and are not exhaustive. *Snyder v. Lovercheck,* 2001 WY 64 at ¶ 15. In the order awarding costs, the trial court found the costs of these depositions (as well as the other costs) "were reasonable and necessary in defending this action [and] were required for trial preparation." The record discloses that appellees made use of the transcript of the Lester Gore deposition for impeachment during the cross examination of Mr. Gore. The trial court did not abuse its discretion in the award of the deposition costs for the Gore and Donaldson depositions.

■ [¶ 22] Gores' objection to the cost of the transcript of the March 24, 2000 motion hearing transcribing the testimony of Virginia Gibb is not well taken. Gores had filed a motion seeking a restraining order to restrict the lawyers' contact with Virginia Gibb during the litigation. The trial court held a hearing on that issue on March 24, 2000, and the court and counsel elicited testimony from Mrs. Gibb which was transcribed. Appellees then attached the transcript as Exhibit 2 to their Second Supplemental Submission in Support of Defendants' Motion for Summary Judgment. The transcript is part of the record on appeal before this court and appears at pages 633–658 of that record. It was, therefore, not an abuse of discretion by the trial court to award appellees their costs in the preparation of the transcript of the testimony of Virginia Gibb.

■ [¶ 23] The provisions of W.U.R.D.C. 501(a)(3)(D)(ii) do not contain a qualifying clause and are mandatory. The rule is specific in its provisions concerning the fees for depositions: "Reporters' travel, per diem expenses and *appearance fees* will not be taxed as costs." (Emphasis added.) Therefore, the trial court's award of appearance fees for court reporters at depositions in the total amount of $95.00 was not appropriate and the award of costs should be modified and reduced by that amount. There was no abuse of discretion by the trial court in awarding $68.26 for copy costs.

## CONCLUSION

[¶ 24] The trial court properly granted the appellees' motion for judgment as a matter of law at the conclusion of appellants' case in chief. Appellants completely failed to prove the necessary elements of a cause of action for tortious interference with a contract or business expectancy. The trial court did not err in allowing hearsay evidence which was elicited by counsel for appellants. The trial court did not abuse its discretion in awarding costs for depositions, a motion hearing, and copy costs. The trial court's award of court reporter deposition appearance fees was not appropriate, and the award of costs should be reduced by $95.00.

[¶ 25] Affirmed as modified as to costs.