# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 163

OCTOBER TERM, A.D. 2022

*December 29, 2022*

SWEETWATER STATION, LLC,

Appellant
(Plaintiff),

v.

DANIEL L. and LINDA J. PEDRI;
DANIEL J. and RORI S. PEDRI;
CHELSEA EGBERT; RANDY FUJA;
GABE E. BUSTOS; CESAR F. DIAZ-
VAZQUEZ; AARON WILCOX; JANNEL
FOSSEN; BRENT and KAYLA LLOYD;
JOSE A. GONZALEZ; ALLYSON
CROSS; KERRY E. OSBORNE and
JUDITH A. OSBORNE, as Trustees of the
Kerry E. Osborn and Judith A. Osborne
Trust dated December 11, 2007; RORY M.
and BRIANNE M. CROFTS; FRED and
SUSAN VON AHRENS; RICK A. and
RHONDA F. GREENE; DANIEL
MADSEN; JAMES J. and DOROTHY S.
SCHNEIDERS; JOHN E. HAY; GARY
W. ELMORE JR., Trustee of the Gary W.
Elmore Jr., Living Trust; DIRK L. and
MELISSA ANDERSON; JASON and
KARA GRENIER; RYAN B. GREENE;
and SWEETWATER STATION
HOMEOWNERS ASSOCIATION,

Appellees
(Defendants).

S-22-0113

*Appeal from the District Court of Sweetwater County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

      *Judith A. W. Studer, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.*

*Representing Appellees:*

      *Aaron John Lyttle, Long Reimer Winegar LLP, Cheyenne, Wyoming; Erika Marie Nash, Long Reimer Winegar LLP, Jackson, Wyoming. Argument by Mr. Lyttle.*

**Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]     This is a dispute over the covenants, conditions, and restrictions (CCRs) applicable to the Sweetwater Station Addition, a subdivision in Rock Springs, Wyoming. In 2020, the Sweetwater Station Homeowners Association (HOA) unilaterally recorded an amendment to the CCRs that affected the declarant's rights under them. The declarant, Sweetwater Station, LLC (Sweetwater), sued the HOA and its members. It sought a declaration that the amendment was invalid and also asserted claims for quiet title, slander of title, and interference with a prospective contract.

[¶2]     The HOA and its members moved to dismiss the complaint for failure to state a claim. The district court found the amendment to the CCRs was valid and granted the motion to dismiss all claims. We reverse.

## ISSUES

[¶3]          1. Did the district court err in dismissing Sweetwater's request for declaratory relief and its related quiet title claim?

2. Did the district court err in dismissing Sweetwater's slander of title claim?

3. Did the district court err in dismissing Sweetwater's contract interference claim?

## FACTS

[¶4]     In 2005, Sweetwater recorded the Amended and Restated Declaration of Covenants, Conditions and Restrictions for the Sweetwater Station Addition (CCRs). Sweetwater intended to develop the subdivision in two phases, Phase I and Phase II. When the CCRs were recorded, Phase I had been platted. Phase II was planned, but its preliminary plat was not filed, and Phase II was not developed. The CCRs called for the organization of a homeowners' association, with its membership consisting of every owner of a lot in Phase I. Pursuant to that requirement, Sweetwater organized the Sweetwater Station Homeowners Association (HOA), and its members are the individually named defendants.

[¶5]     In 2019, Sweetwater entered into a contract for the sale of the lands encompassed by Phase II of the subdivision. It also sought the Rock Springs City Council's approval of an "application for major changes to the final development plan for the Sweetwater Station Phase II Planned Unit Development." Members of the HOA spoke in opposition to the development plan, objecting to the proposed increase in the density of lots for Phase II. In December 2019, the Rock Springs City Council approved the development plan for Phase II.

1

[¶6]    In 2020, the HOA, by a vote of 81% of its members, adopted the first amendment to the CCRs and recorded it. Sweetwater was not notified of the vote and did not participate. The recorded amendment revised the definition of the term "Lot" to mean the platted lots shown on the plat for Phase I "as well as the final plat for one or more subsequent Phases of the Sweetwater Station Addition." The amendment also revised voting eligibility under the CCRs by limiting the votes of any given lot owner to three votes, regardless of the number of lots owned.[1] Finally, the amendment restricted the declarant's right to vote by adding the following language to each of the voting provisions:

> [A]fter the filing of a final plat for a subsequent Phase of the Sweetwater Station Addition lying within the boundaries of the Property, including Sweetwater Station Addition Phase II and any other Phases, no votes shall be attributed to a Lot within such subsequent Phase prior to the conveyance or assignment of the Lot to an Owner who is not the Declarant.

[¶7]    When the HOA refused to withdraw the recorded amendment or limit its application to Phase I properties, Sweetwater sued the HOA and its individual members. It alleged that it had been unable to close on its contract to sell the Phase II property because the amendment to the CCRs clouded its title, and it requested the amendment be declared invalid and its recording void. It also sought to quiet title to the lands encompassed in Phase II with a recorded order declaring the amendment to the CCRs invalid, and it asserted claims for slander of title and interference with a prospective contract.

[¶8]    The HOA and its members moved to dismiss Sweetwater's complaint for failure to state a claim. They argued the amendment was adopted in compliance with the CCRs and Sweetwater therefore had no claim for declaratory relief or to quiet title. They further argued that even if the amendment was not valid, Sweetwater had no claim for slander of title because the recorded amendment contained no false statements. Last, they argued that Sweetwater did not have a claim for interference with a prospective contract because it did not and could not allege that the HOA or its members acted in bad faith in recording the amendment to the CCRs or that the amendment contained a false statement.

[¶9]    The district court granted the motion to dismiss. It concluded that under the plain language of the CCRs, the amendment to the CCRs was valid. It also agreed that because the recorded amendment contained no false statements, Sweetwater could not maintain a claim for slander of title. It concluded that Sweetwater could not maintain a claim for interference with a prospective contract because the HOA and its members acted in good faith to protect their own economic interests, which it ruled precluded an interference

---

[1] Before the amendment, the CCRs allowed one vote per lot owned, without limit, and allowed the declarant two votes per lot owned.

2

claim. It further reasoned that because the recorded amendment contained no false statements, it could not provide a basis for an interference claim. Sweetwater timely appealed.

## *STANDARD OF REVIEW*

[¶10]   The CCRs were attached as an exhibit to Sweetwater's complaint. In support of their motion to dismiss, the HOA and its members asked the district court to take judicial notice of the recorded plat for Phase I, the minutes from a Rock Springs City Council meeting, and the recorded amendment to the CCRs. Sweetwater also asked the court to take judicial notice of the minutes from a separate Rock Springs City Council meeting. The district court did not rule on either request, but its order referenced information from the materials.

[¶11]   Because the court considered materials outside the complaint in ruling on its motion to dismiss, it should have converted the motion to one for summary judgment. *See* W.R.C.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Nonetheless, the questions presented for our review are purely questions of law that may be answered based on the allegations in the complaint. We will therefore review the court's ruling as a Rule 12(b)(6) dismissal. *See James v. James*, 2021 WY 96, ¶ 24, 493 P.3d 1258, 1265 (Wyo. 2021) (summary judgment motion is functional equivalent of a Rule 12(b)(6) motion if it is "based solely on a question of law which is set out exclusively in the pleadings") (quoting *Motzko Co. USA, LLC v. A & D Oilfield Dozers, Inc.*, 2014 WY 5, ¶ 16, 316 P.3d 1177, 1181 (Wyo. 2014)).

[¶12]   Our review of a W.R.C.P. 12(b)(6) dismissal is de novo.[2]

> We review orders granting a motion to dismiss under Rule 12(b)(6) de novo. *Craft v. State ex rel. Wyo. Dep't of Health*, 2020 WY 70, ¶ 9, 465 P.3d 395, 399 (Wyo. 2020). "We employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint as true and view them in the light most favorable to the non-moving party." *Id.* (quoting *Moose Hollow Holdings, LLC v. Teton Cty. Bd. of Cty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017)). Dismissal is appropriate where it is certain from the face of the complaint that the plaintiff cannot assert any fact that would entitle him to relief. *Craft*, 2020 WY

---

[2] The district court cited both Wyoming law governing dismissal under Rule 12(b)(6) and the federal plausibility standard from *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009). We have not adopted the *Iqbal* standard. *Wyo. Guardianship Corp. v. Wyo. State Hosp.*, 2018 WY 114, ¶ 16, 428 P.3d 424, 431 (Wyo. 2018). We therefore apply our established standard for determining whether dismissal was appropriate.

70, ¶ 9, 465 P.3d at 399 (citing *Dowlin v. Dowlin*, 2007 WY
114, ¶ 6, 162 P.3d 1202, 1204 (Wyo. 2007); W.R.C.P.
12(b)(6)).

*Moses Inc. v. Moses*, 2022 WY 57, ¶ 8, 509 P.3d 345, 349 (Wyo. 2022) (quoting *Dockter v. Lozano*, 2020 WY 119, ¶ 6, 472 P.3d 362, 364 (Wyo. 2020)).

***I. The provisions of the CCRs governing their amendment are ambiguous, and the district court therefore erred in dismissing Sweetwater's claims for declaratory relief and quiet title.***

[¶13] "Covenants are contractual in nature and we therefore interpret them as we would a contract." *Winney v. Hoback Ranches Prop. Owners Improvement & Serv. Dist.*, 2021 WY 128, ¶ 46, 499 P.3d 254, 266 (Wyo. 2021) (quoting *Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 29, 393 P.3d 1279, 1290 (Wyo. 2017)). "Our goal is 'to determine and effectuate the intention of the parties, especially the grantor or declarant.'" *Reichert v. Daugherty*, 2018 WY 103, ¶ 15, 425 P.3d 990, 995 (Wyo. 2018) (quoting *Wimer v. Cook*, 2016 WY 29, ¶ 22, 369 P.3d 210, 218 (Wyo. 2016)).

[¶14] "In the absence of an ambiguity, 'we adhere to the covenant's plain and ordinary meaning without reference to attendant facts and circumstances or extrinsic evidence.'" *Winney*, 2021 WY 128, ¶ 48, 499 P.3d at 266 (quoting *Reichert*, 2018 WY 103, ¶ 16, 425 P.3d at 995).

> The words used in the covenant are afforded the plain meaning that a reasonable person would give to them. When the provisions in the covenant are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties.

*Id.* at ¶ 47, 499 P.3d at 266 (cleaned up).

[¶15] A covenant is ambiguous "if it is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present." *Id.* at ¶ 48, 499 P.3d at 266 (quoting *Reichert*, 2018 WY 103, ¶ 16, 425 P.3d at 995). Although the parties contend the CCRs are unambiguous, that does not govern our conclusion. "[R]eviewing courts are free to make a determination as to the existence of ambiguity whether or not the parties agree one way or the other and whether or not the trial court has reached a conclusion one way or the other." *Id.* at ¶ 61, 499 P.3d at 269 (quoting *Felix Felicis, LLC v. Riva Ridge Owners Ass'n*, 2016 WY 67, ¶ 16, 375 P.3d 769, 774 (Wyo. 2016)).

[¶16] The disputed provisions of the CCRs are those that address their amendment. Article II, Section 1 provides:

The Common Areas and all Lots, whether or not the instruments of conveyance or assignment shall refer to this Declaration, shall be subject to the covenants, conditions, restrictions, easement, reservations and other provisions contained in this Declaration, as the same may be amended from time to time. The covenants, restrictions, reservations and conditions contained herein shall run with the land and shall be binding upon all persons purchasing, leasing, sub-leasing or occupying any lot or lots in the development and shall remain in full force and effect *until a majority of the owners of all of the planned lots in the subdivision shall direct otherwise, as provided in Article VII, section 4 below*.

(Emphasis added.)

[¶17]   Article VII, Section 4 of the CCRs states as follows:

Amendment. This Declaration may only be amended by a vote of two thirds (2/3) of the eligible votes of all Owners. Any such amendment must be in writing and shall be filed promptly upon its adoption with the County Clerk for the County of Sweetwater, Wyoming.

[¶18]   The difficulty in interpreting these two provisions stems from the CCRs' definitions of the terms "Owner" and "Lot." Article I, Section 9 of the CCRs, with our emphasis added, defines an "Owner" as "any record owner . . . of a fee simple title interest in any *Lot*, including Declarant and including contract sellers and contract purchasers, as may be designated in the contract documents[.]" Article I, Section 7, again with our emphasis added, defines "Lot" as follows:

Lot, as used in each section of this Agreement other than Article I, Section 5, shall mean and refer to any of the separately designated and identified *platted Lots as shown on the Plat for the Sweetwater Station Addition Phase I*, including the structures located on any such *platted Lot* and the appurtenances situate thereon and appertaining thereto, specifically excepting therefrom all of the Common Areas.

[¶19]   When Article I, Sections 7 and 9 are read together, the term "Owner," as used in the CCRs, means an owner of a platted Phase I lot. *See Star Valley Ranch Ass'n v. Daley*, 2014 WY 116, ¶ 23, 334 P.3d 1207, 1213 (Wyo. 2014) ("Our rules of interpretation require that we interpret a contract as a whole, reading each provision in light of all the others to find

5

their plain meaning.") (quoting *Claman v. Popp*, 2012 WY 92, ¶ 28, 279 P.3d 1003, 1013 (Wyo. 2012)). This definition of owner creates inconsistencies in and between the CCRs' amendment provisions, making them ambiguous.

[¶20]  Article II, Section 1 provides that the CCRs "shall remain in full force and effect until a majority of the owners of all of the planned lots in the subdivision shall direct otherwise[.]" This section uses the term "owners," in conjunction with ***planned*** lots in the subdivision, but the CCRs define an owner solely as one who owns a Phase I ***platted*** lot. In other words, using the CCRs' own definitions, the "majority of the owners" should mean the majority of the Phase I platted lot owners, but the language that follows owners in Article II, Section 1 is inconsistent with such a meaning. Given this inconsistency, the phrase has a double meaning that renders it obscure and therefore ambiguous.

[¶21]  Sweetwater contends that the double meaning can be avoided if the terms owner and lot are defined as the CCRs direct only when the terms are capitalized. Otherwise, it contends, the terms should be given their ordinary meaning. The district court rejected this argument, and we do as well. Throughout the CCRs, the terms owner and lot are sometimes capitalized and sometimes not. Nothing about the provisions in which they appear one way or the other suggests the failure to capitalize was anything other than random. We therefore see no basis on which to define the terms differently based on their capitalization.

[¶22]  Even if we were to accept that owner and lot have different meanings when not capitalized, that would not resolve the ambiguity. Although Article II, Section 1 contemplates an amendment by "a majority of the owners of all of the planned lots in the subdivision," it directs that it be done as provided in Article VII, Section 4. Article VII, Section 4 allows an amendment of the CCRs only "by a vote of two thirds (2/3) of the eligible votes of all Owners." Aside from the difference in the number of votes required to amend, one provision governing amendments capitalizes the term owners and the other does not. Thus, if we were to accept a distinction based on capitalization, Article II, Section 1 would allow an amendment only upon majority approval by all planned lot owners, whereas Article VII, Section 4 would permit an amendment only upon vote of the owners of Phase I platted lots. The inconsistency between the two provisions again creates an ambiguity.

[¶23] The district court attempted to resolve this conflict by accepting the HOA's argument that because Article II, Section 1 appears in the article governing use restrictions, it applies only when the term being amended is one of the use restrictions. We reject this interpretation because it fails to give meaning to all the terms of Article VII, Section 4. *Jackson as Tr. of Phillip G. Jackson Fam. Revocable Tr. v. Montoya*, 2020 WY 116, ¶ 18, 471 P.3d 984, 988 (Wyo. 2020) ("[E]very word, phrase or term of a contract must be given effect.") (quoting 11 *Williston on Contracts* § 32:5 (4th ed., May 2020 update)). Article VII, Section 4 refers to the "Declaration," meaning the CCRs in their entirety, including

the use restrictions, and it allows an amendment only as provided therein.[3] Additionally, Article II, Section 1 incorporates the requirements of Article VII, Section 4, without limitation. We are thus unable to discern an intent from the language of either provision to have Article II, Section 1 apply only to use restriction amendments and Article VII, Section 4 apply to all other amendments.

[¶24]   Article II, Section 1 and Article VII, Section 4 of the CCRs are irreconcilable, and the conflict between the two makes the requirements for amending the CCRs ambiguous. When a covenant is ambiguous, a court must look to extrinsic evidence to determine the parties' intent. *Winney*, 2021 WY 128, ¶ 60, 499 P.3d at 269 (citing *Gayhart v. Corsi*, 2020 WY 58, ¶ 15, 462 P.3d 904, 909 (Wyo. 2020)). We thus remand to the district court for its consideration of extrinsic evidence of the parties' intent.[4]

### II. The district court erred in dismissing Sweetwater's slander of title claim.

[¶25]   "Wyoming defines slander of title as 'a false and malicious statement made in disparagement of a person's title to real or personal property, or of some right of his causing him special damage.'" *CIBC Nat'l Tr. Co. v. Dominick*, 2020 WY 56, ¶ 8, 462 P.3d 452, 456 (Wyo. 2020) (quoting *Sannerud v. Brantz*, 879 P.2d 341, 344 (Wyo. 1994)); *see also*

---

[3] The CCRs define "Declaration," to "mean and refer to this Declaration of Covenants, Conditions and Restrictions and all amendments thereto."

[4] We decline Sweetwater's request that we adopt section 6.10(3) of the Restatement (Third) of Property: Servitudes (2000), which would require a unanimous vote to change the basis for allocating voting rights under covenants. We have said:

> Where a contract is silent on a particular matter that easily could have been drafted into it, a court should refrain from supplying the missing language under the pretext of contract interpretation. Courts are not at liberty to rescue parties from the consequences of a poorly made bargain or a poorly drafted agreement by rewriting a contract under the guise of construing it.

*Gumpel*, 2017 WY 46, ¶ 42, 393 P.3d at 1293-94 (cleaned up) (quoting *In re CDR*, 2015 WY 79, ¶ 30, 351 P.3d 264, 270-71 (Wyo. 2015)); *see also Hassler v. Circle C Res.*, 2022 WY 28, ¶ 29, 505 P.3d 169, 178 (Wyo. 2022) (overruling adoption of the blue pencil rule and stating, "Wyoming courts will no longer exceed the scope of their traditional authority in contract interpretation by redrafting noncompete agreements to bring them within the bounds of reason"). The CCRs do not require unanimous approval of a change to the basis for allocating voting rights, and we will not judicially superimpose such a requirement. We likewise reject Sweetwater's suggestion that the CCRs should be interpreted according to a reasonableness standard. We have said:

> [W]hile a reasonableness standard is appropriate when reviewing an association's or committee's application of discretionary decisions afforded by the covenants, we interpret the language and meaning of the covenants in accordance with the principles of contract law.

*Felix Felicis*, 2016 WY 67, ¶ 17, 375 P.3d at 775.

Wyo. Stat. Ann. § 34-10-109 (LexisNexis 2021). The HOA moved to dismiss Sweetwater's slander of title claim on the ground it did not allege that the HOA's recorded amendment contained a false statement. The district court agreed and dismissed on that basis.

[¶26]  In so ruling, the district court relied on the reasoning in *Jepsen v. Camassar*, 187 A.3d 486, 499 (Conn. App. Ct. 2018). In that case, landowners in a subdivision each held title to their own property as well as a deed to an undivided interest in the associated beachfront property. *Id*. at 490. A group of the landowners recorded modifications to the use restrictions contained in the beach deed, and others who disagreed with the action filed suit asserting claims that included one for slander of title. *Id*. at 498-500. The appellate court upheld the dismissal of the slander of title claim on several grounds, including that although the modification was improperly recorded, it did not contain a false statement. The court explained:

> [The plaintiffs] have not demonstrated that the defendants, in filing the modifications on the land records, published a false statement. There is no suggestion that the substance of those written instruments was anything other than an accurate statement of their content—namely, that the signatories thereto wished to amend the beach deed in various respects. As the defendants concede in their appellate brief, those modifications may have been improper under the terms of the beach deed, as we have concluded in part I of this opinion, but they do not contain any demonstrably false statements about the plaintiffs' title.

*Id*. at 510; *see also Matheson v. Harris*, 572 P.2d 861, 864 (Idaho 1977) (fact that recorded earnest money agreement was ultimately determined to be unenforceable did not render it a false document).

[¶27]  We disagree with the reasoning of this approach. While there may be instances where a document contains a false statement that makes its recording actionable, that is not the only falsity that could be actionable as a slander of title. States with laws similar to Wyoming's have recognized that "[t]he act of maliciously recording a document that clouds another's title to real estate is actionable as slander of title." *Gambino v. Boulevard Mortg. Corp.*, 922 N.E.2d 380, 418 (Ill. App. Ct. 2009) (citing *Am. Nat'l Bank & Tr. Co. v. Bentley Builders, Inc.*, 719 N.E.2d 360, 361-62 (Ill. 1999)); *see also In re Cedano*, 470 B.R. 522, 533 (B.A.P. 9th Cir. 2012) ("The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title.") (quoting *Nguyen v. Bank of Am. Nat'l Ass'n*, 2011 WL 5574917, at *7 (N.D. Cal. Nov. 15, 2011)); *39 Coll. Point Corp. v. Transpac Cap. Corp.*, 810 N.Y.S.2d 520, 521 (N.Y. App. Div. 2006) ("The wrongful filing for record of a document which casts a cloud upon another's title to or interest in realty is clearly such an act of publication as to give rise to an action for slander

8

of title, if provable damages result[.]") (quoting *Hanbidge v. Hunt*, 583 N.Y.S.2d 288, 289 (N.Y. App. Div. 1992)); *Paidar v. Hughes*, 615 N.W.2d 276, 280 (Minn. 2000) ("The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.") (citing *Kelly v. First State Bank of Rothsay*, 177 N.W. 347, 347 (Minn. 1920)); *Gudger v. Manton*, 134 P.2d 217, 220 (Cal. 1943), *overruled on other grounds by Albertson v. Raboff*, 295 P.2d 405, 409-10 (Cal. 1956) (describing a false lien as one "without legal foundation").

[¶28]  For example, in *Wilk v. Discover Bank*, 144 N.E.3d 1023, 1029 (Ohio Ct. App. 2019), the plaintiff filed several claims against his ex-wife's creditor, including one for slander of title, after it wrongfully recorded a lien against his property for his ex-wife's debt. The trial court dismissed the slander of title claim, and the creditor argued on appeal that dismissal was appropriate because, although it wrongfully recorded the lien, the plaintiff did not allege the lien contained a false statement. *Id*. at 1032. The appellate court rejected the argument.

> As alternative grounds for dismissal of this claim, Discover argues that dismissal is warranted because Keith does not allege in his complaint that Discover made any false statement relative to the certificate of judgment. We disagree. Upon construing the allegations in the complaint in Keith's favor, he is claiming that Discover's act in securing the lien against his property was a false statement that caused his loan company to institute foreclosure proceedings. Thus, dismissal of this claim was not warranted under Civ.R. 12(B)(6).

*Id*.

[¶29]  In *Gudger*, the plaintiff filed a slander of title claim against his wife's judgment creditors after they filed a lien against property he owned but in which wife had no interest. 134 P.2d at 220. The trial court ruled in favor of the plaintiff, and one of the creditors argued on appeal that the lien could not be a cloud on the plaintiff's title because it purported only to be a lien for a judgment against his wife. *Id*. The California Supreme Court rejected that argument and instead looked not just to the words used in the lien but to the implication of its filing.

> The recording of the notice of the execution necessarily embraced the imputation that plaintiff's wife had the whole or a part interest in plaintiff's property, and that such interest was subject to the execution levy. . . . While it is true the execution claimed only such interest as plaintiff's wife had in the property, the only reasonable implication is that in fact the wife

9

did have an interest in the property and a lien thereon was claimed.

*Id*. at 221.

[¶30] The HOA's recording of the amendment to the CCRs represented more than a statement that twenty-one of the twenty-six Phase I lot owners voted to amend the CCRs. Sweetwater alleged that the HOA's amendment of the CCRs was invalid and affected its property rights. Construing the pleadings liberally, as we must, Sweetwater alleged the wrongful recording of a document that cast a cloud on its title. *James*, 2021 WY 96, ¶ 32, 493 P.3d at 1267 ("[P]leadings must be liberally construed in order to do justice to the parties.") (quoting *Acorn v. Moncecchi*, 2016 WY 124, ¶ 66, 386 P.3d 739, 759 (Wyo. 2016)). Because of the ambiguity in the CCR amendment provisions, we do not yet know whether the HOA's amendment was wrongfully recorded. However, because Sweetwater's complaint alleged the recording was wrongful, it adequately pled the false statement element of the slander of title claim, and dismissal at this point was premature. *39 Coll. Point*, 810 N.Y.S.2d at 521 ("The wrongful filing for record of a document which casts a cloud upon another's title to or interest in realty is clearly such an act of publication as to give rise to an action for slander of title, if provable damages result") (citation omitted).

### III. The district court erred in dismissing Sweetwater's claim for intentional interference with a prospective contract.

[¶31] We have generally defined the tort of intentional interference with a prospective contract as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Rammell v. Mountainaire Animal Clinic*, 2019 WY 53, ¶ 25, 442 P.3d 41, 49 (Wyo. 2019) (quoting *Gore v. Sherard*, 2002 WY 114, ¶ 12, 50 P.3d 705, 710 (Wyo. 2002)). The elements of the claim are:

> (1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

10

*Downs v. Homax Oil Sales, Inc.*, 2018 WY 71, ¶ 21, 421 P.3d 518, 524 (Wyo. 2018) (quoting *Gore*, 2002 WY 114, ¶ 13, 50 P.3d at 710).

[¶32]   Sweetwater alleged each of the elements in its complaint: the existence of a contract; the HOA's knowledge of the contract; that the HOA intentionally and improperly interfered with the contract; and the resulting damages. Nonetheless, the district court dismissed Sweetwater's claim. It reasoned that the HOA's conduct could not have been improper because it did no more than make a truthful statement that twenty-one of the twenty-six Phase I lot owners voted to approve the amendment to the CCRs. It further concluded the HOA's recording of the amendment was proper because it was a good faith act to protect its own economic interests.

[¶33]   With respect to the truthfulness of the HOA's statement, the district court was correct that "truthful statements, solicited or volunteered, are not actionable" under an intentional interference claim. *Wilder v. Cody Country Chamber of Com.*, 868 P.2d 211, 225 (Wyo. 1994) (quoting *Four Nines Gold, Inc. v. 71 Const., Inc.*, 809 P.2d 236, 238 (Wyo. 1991)). As discussed above, however, the HOA's statement went beyond an assertion of the vote tally on the HOA's amendment. The recording of the amendment had the effect of asserting the amendment was validly adopted and governed the affected property. Because the amendment provision of the CCRs is ambiguous, it is too soon to say that the amendments were validly adopted. Dismissal on this ground was therefore premature.

[¶34]   As to the question of whether the HOA's recording of the amendment was a good faith effort to protect its own legal interest, the rule is:

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest ***by appropriate means***, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

*Sunshine Custom Paints & Body, Inc. v. South Douglas Highway Water & Sewer Dist.*, 2007 WY 206, ¶ 23, 173 P.3d 398, 404 (Wyo. 2007) (quoting Restatement (Second) of Torts, § 773 (1979)) (emphasis added).

[¶35]   "This defense of protecting an economic interest is, in substance, an affirmative defense as to which [the HOA] has the burden of proof." *Carlson v. Carlson*, 775 P.2d 478, 484 (Wyo. 1989) (citing *Miller v. Badgley*, 753 P.2d 530 (Wash. App. 1988)). Again,

because the amendment provisions of the CCRs are ambiguous, it is not clear that the HOA's recording of its amendment was an "appropriate means" for protecting its economic interests. Nor is there anything else in the pleadings from which the district court could conclusively determine that the HOA and its members acted in good faith in recording the amendment. *See Carlson*, 775 P.2d at 484 (whether interference was good faith effort to protect economic interests was question of fact); *Sheaffer v. State ex rel. Univ. of Wyo., ex rel. Bd. of Tr.*, 2009 WY 19, ¶ 51, 202 P.3d 1030, 1044 (Wyo. 2009) ("Whether or not interference with a contract was improper is a question of fact."). Thus, dismissal on this ground was also premature.

## *CONCLUSION*

[¶36]  The amendment provisions of the CCRs are ambiguous, and extrinsic evidence is required to determine the parties' intent. The district court therefore erred in dismissing Sweetwater's declaratory judgment and quiet title claims. Sweetwater also adequately pled its claims for slander of title and interference with a prospective contract and for the reasons stated herein, the court's dismissal of those claims was premature. We reverse and remand for proceedings consistent with this opinion.

12